**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OHIO NATIONAL LIFE ASSURANCE CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-08-2285 |
| MAGGIE RILEY-HAGAN, | § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In this insurance coverage dispute, Ohio National Life Assurance Corporation seeks a declaratory judgment that Maggie Riley-Hagan is not entitled to the life insurance benefits she sought after the death of her husband, Don Hagan. When Don Hagan applied for the life insurance policy at issue, he and his family lived in Texas. When Don Hagan died and Ohio National denied the benefits claim, Riley-Hagan was a Texas resident. Shortly after Don Hagan's death, Riley-Hagan returned to California, where she and her husband had lived before 2004. Riley-Hagan has filed a breach of contract and tort suit against Ohio National and its agent, Matrix Direct, in California state court.

Riley-Hagan moved to dismiss this Texas case for lack of personal jurisdiction and for improper venue. She alternatively sought transfer to the Federal District Court in the Southern District of California. (Docket Entry No. 9). Ohio National responded, (Docket Entry No. 13), and Riley-Hagan replied, (Docket Entry No. 14). At this court's request, the

parties provided supplemental briefing on this court's discretion to decline jurisdiction over a declaratory judgment action. (Docket Entry Nos. 20, 21). Riley-Hagan asks this court to dismiss in favor of the pending parallel state-court suit.

Based on a careful review of the motion, response, and reply; the parties' submissions; and the applicable law; this court declines to exercise jurisdiction and dismisses this declaratory judgment suit, without prejudice. Riley-Hagan's motion to dismiss and motion for transfer of venue are denied as moot. The reasons for these rulings are explained below.

**I.     Background**

In 2004, Riley-Hagan and her husband moved from San Marcos, California to Friendswood, Texas. Don Hagan was employed at NASA in Houston and Riley-Hagan worked as a physician at the University of Texas Medical Branch at Galveston (UTMB). The couple retained their home in California, which they had purchased in 1992. They planned to stay in Texas until their youngest child, then eight, graduated from high school. At that point, they intended to move back to California and stay there.

In 2007, Don Hagan wanted to purchase a new life insurance policy. On February 22, 2007, he found an online insurance agency, Matrix Direct, located in San Diego, California. According to its website, Matrix Direct was an agent for a number of nationwide insurance companies, including Ohio National. The record shows that Ohio National is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

Through Matrix Direct, Don Hagan submitted an online application for a $250,000 term life insurance policy from Ohio National. In connection with his application, Don Hagan signed a temporary life insurance agreement that provided life insurance "for not more than 60 days beginning, when and if, all of the following conditions are met: 1) You are less than age 70; 2) You have not been diagnosed or treated for heart attack, stroke or cancer within the last two years; 3) You have not been advised to have surgery which has not been performed; 4) You have truthfully completed and signed the Application for life insurance with Ohio National Life; 5) You have taken all medical or paramedical exams and tests we require under our underwriting guidelines and practices, which may include an x-ray and electro-cardiogram ("EKG"); and 6) The first monthly premium for the policy as applied for has been paid to Ohio National Life by means acceptable to us." (Docket Entry No. 4, at ¶ 8). This temporary agreement stated that no life insurance would be provided if "death is proximately caused by a sickness, injury, or condition for which a medical professional provided or prescribed treatment within one year prior to the date of the Application" or "if we find that you are not insurable as of the effective date of this Agreement under our underwriting guidelines and practices." (*Id.,* at ¶ 9).

On May 12, 2007, approximately 78 days into the underwriting process, Don Hagan died of a heart attack. The death occurred in Texas. (Docket Entry No. 9, Declaration of Maggie Riley-Hagan at ¶ 3). Shortly after Hagan died, Riley-Hagan telephoned Ohio National demanding benefits under the temporary life insurance agreement. Ohio National sent Riley-Hagan a denial letter dated May 30, 2007, stating that the temporary agreement

3

had never become effective. Ohio National asserted that Don Hagan did not pay the first monthly premium by acceptable means because although he provided an authorization to charge his credit card, he did not sign the authorization. Don Hagan had asked Ohio National to debit his bank account and provided a voided check, but Ohio National asserted that he did not include a signed authorization form allowing them to charge the bank account. Ohio National's denial letter also stated that even if the temporary agreement had taken effect, the 60-day coverage period would have expired before Don Hagan's death.

After Ohio National denied her benefits claim, Riley-Hagan hired a Texas attorney who sent Ohio National a demand letter on July 27, 2007. In that letter, the Texas attorney stated: "Please be advised that Ms. Margaret Hagan has retained our firm to handle claims related to Raymond Donald Hagan's application for life insurance through Matrix Direct Insurance Services and Ohio National Life Insurance Company." (Docket Entry No. 13, Ex. 2). The demand letter stated that failure to pay would lead to claims against Ohio National for breach of contract, negligence, negligent misrepresentation, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act. (*Id.*). The letter demanded $250,000 in life insurance proceeds plus $1,000 in attorney's fees. (*Id.*).

After her husband's death, Riley-Hagan decided to leave Texas. She resigned from UTMB effective July 31, 2007. In August 2007, she and her children moved back to San Marcos, California. Riley-Hagan subsequently retained an attorney in California. On July 17, 2008, Riley-Hagan's California lawyer sent a demand letter to Ohio National and Matrix Direct. In that letter, counsel stated as follows:

4

> If the policy is not paid, it is my intent to file a lawsuit in San Diego Superior Court for professional negligence, breach of contract, and other causes of action. The local state court will retain jurisdiction over the case (there is no complete diversity), and I intend to litigate the case under California law . . . .

(Docket Entry No. 21, Ex. C). Five days later, Ohio National filed this declaratory judgment suit in the Southern District of Texas. (Docket Entry No. 1).

In this Texas case, Ohio National seeks a declaratory judgment that "the Temporary Agreement did not take effect and that any claim against Ohio National for life insurance benefits or otherwise is barred." (*Id.*). Ohio National asserts that Texas law applies under Article 21.42 of the Texas Insurance Code, which states that any "contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made by and entered into under and by virtue of the laws of this State relating to insurance. . . ." TEX. INS. CODE ANN. ART 21.42; *see also Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 405 (5th Cir. 2004) (citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 192 and stating that in interpreting a life insurance policy, a court applies "the local law of the state where the insured was domiciled at the time the policy was applied for").

In its first amended complaint, Ohio National contends that there was no effective life insurance policy because the temporary agreement never became effective. Ohio National asserts that it did not receive an acceptable form of payment or the medical records it requested from Hagan's physicians to finish its underwriting work. (Docket Entry No. 4).

5

On August 28, 2008, Riley-Hagan moved to dismiss this suit. (Docket Entry No. 9). On September 18, 2008, Riley-Hagan filed suit in California Superior Court, San Diego County, against Ohio National, Matrix Direct, Inc., and Matrix Direct Insurance Services, alleging breach of contract and negligence. In her California suit, Riley-Hagan alleged that Ohio National and Matrix unnecessarily delayed processing Don Hagan's application, failed to notify Don Hagan that his premium payment was not accepted, and continued the underwriting process without informing Hagan that he did not have temporary coverage or that his temporary coverage was about to expire. Ohio National filed a motion to stay the California action pending resolution of the declaratory judgment suit in this court. The California suit has been stayed pending this court's ruling on Riley-Hagan's motions to dismiss for lack of personal jurisdiction or transfer venue. The parties informed this court that the stay will be lifted and the California suit will proceed if this action is dismissed.

The threshold issue is whether this court should decide this declaratory judgment action or dismiss it without prejudice in favor of the pending California suit.

## II.     The Standard for Deciding Whether to Dismiss or Retain a Declaratory Judgment Action

The Declaratory Judgment Act, 28 U.S.C. §2201(a), "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *The Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (citations omitted). "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* "In the

declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* In a case in which the federal case involves issues between parties that are also litigating in a parallel state case, the fundamental question in deciding how the court should exercise its discretion is "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in state court." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 495 (1942).

In *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000), the Fifth Circuit set out a three-step process for courts to follow in deciding whether to dismiss a declaratory judgment action. "A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams*, 343 F.3d at 387 (discussing *Orix*, 212 F.3d at 895).

A declaratory judgment action is justiciable if "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Venator Group Specialty, Inc. v. Matthew/Muniot Family, L.L.C.*, 322 F.3d 835, 838 (5th Cir. 2003). This action is justiciable. Ohio National and Riley-Hagan disagree over whether the temporary agreement came into effect; Riley-Hagan claims that Ohio National owes her $250,000 in life insurance benefits; Riley-Hagan threatened to sue – and ultimately did sue – Ohio National for the benefits; and Ohio National reasonably feared litigation at the time it filed this suit.

7

The second issue is whether this court has authority to decide Ohio National's declaratory judgment suit. "[A] district court does not have authority to consider the merits of a declaratory judgment when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under section 2883." *Id.* (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir.1993)). Because Riley-Hagan did not file suit in state court first, this court has authority to grant declaratory relief.

The final issue is whether to decide this action or decline to do so. In *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), the Fifth Circuit identified seven nonexclusive factors for a federal court to consider when deciding whether to decide or dismiss a declaratory judgment action. The *Trejo* factors are: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Id.* at 590-91; *see also Sherwin-Williams*, 343 F.3d at 388.

### III.   Applying the *Trejo* Factors

The *Trejo* factors address three fundamental aspects of deciding whether to exercise jurisdiction over a declaratory judgment suit: the proper allocation of decisionmaking between state and federal courts, fairness, and efficiency. *Sherwin-Williams*, 343 F.3d at 390-91.

#### A.   The Federalism Concerns

The first *Trejo* factor, "whether there is a pending state action in which the matters in controversy may be litigated, requires the court to examine comity and efficiency." *Sherwin-Williams*, 343 F.3d at 391. This factor weighs in favor of dismissing this case. Ohio National filed this Texas case seeking a declaratory judgment that it owed no contractual obligation under the temporary life insurance agreement in July 2008, a few days after Riley-Hagan's California counsel sent a demand letter stating her intent to file suit in California state court. In August 2008, Riley-Hagan moved to dismiss or to transfer venue. On September 18, 2008, Riley-Hagan sued Ohio National and Matrix in California state court, alleging breach of contract and tort claims. All matters in controversy in this case may be fully litigated in the pending state proceeding. Ohio National recognized this by stating in the motion to stay filed in the California state court action that "[t]he Complaint filed in the California Action arises out of the same facts and circumstances that give rise to the Texas action" and that "the subject matter at issue in both cases is identical, to wit: whether [Riley-Hagan] is entitled to the death benefits under the temporary insurance policy and any other relief." (Docket Entry No. 21, Ex. B).

Although all matters in controversy between the parties to this Texas case can be litigated in the California suit, Ohio National argues that comity, "the respect a court of one state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and judicial decisions,"[1] weighs against dismissal because the claims at issue are governed by Texas law. This argument is unpersuasive. Having the coverage issues decided by a California court does not offend comity. This case does not present novel or complex questions of Texas law. A California state judge is fully capable of applying well-settled and clear Texas law to the claims at issue. *See Lynch v. Nat'l Prescription Adm'rs*, 2004 WL 385156, at *5 (S.D.N.Y. Mar.1, 2004) (explaining "in the absence of unique complex state law issues, a New York court would be capable of applying the laws of another state") (internal quotations omitted); *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309-10 (1st Cir. 1986) (affirming dismissal of declaratory relief action in favor of a case pending in Puerto Rico and stating that the court in Puerto Rico was "fully capable of adjudicating the facts and deciding the issue" under Pennsylvania law); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620, 1625 (1942) ("it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court, presenting the same issues, not governed by federal law, between the same parties"). Federalism concerns weigh in favor of dismissing this action in favor of the pending California suit.

---

[1] *In Re Bristol Resources 1994 Acquisition Ltd. Partnership*, 333 F.3d 608, 610 (5th Cir. 2003).

### B.     The Fairness Concerns

"The next three *Trejo* factors – whether the declaratory judgment plaintiff filed suit "in anticipation" of a lawsuit to be filed by the declaratory judgment defendant; whether the declaratory judgment plaintiff engaged in "forum shopping" in bringing the declaratory judgment action; and whether possible inequities exist in allowing the declaratory judgment plaintiff to gain precedence in time or to change forums – analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Sherwin Williams*, 343 F.3d at 391.

Riley-Hagan argues that Ohio National engaged in improper forum shopping by filing this suit in Texas federal court after she threatened to sue in California state court. Ohio National argues that when it filed this suit, it was "still unaware Hagan had moved from Texas to California and assumed the only connection to California was Hagan's choice of counsel and Matrix's headquarters." (Docket Entry No. 20, at 6). Ohio National argues that "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams*, 343 F.3d at 391. Riley-Hagan responds that when Ohio National sued her in Texas, it was clear that she was a California citizen. She points out that the July 2008 demand letter from California counsel made clear the intent to sue both Ohio National and Matrix in California state court and stated that "[t]he local state court will retain jurisdiction over the case (there is no complete diversity)." (Docket Entry No. 21, Ex. C).

Riley-Hagan's first demand letter was sent in July 2007 by a Texas attorney and asserted violations of Texas law. The second demand letter, sent in July 2008, was from a California lawyer and threatened to sue under California law. This July 2008 demand letter informed Ohio National that if Riley-Hagan filed suit in California state court against Ohio National and Matrix (a California corporation), the case would not be removable because there would not be complete diversity. This statement, along with the fact that the demand letter was sent by a California attorney and threatened suit in California state court, strongly indicated that Riley-Hagan was a California citizen.

Ohio National is correct that "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation" is not "forum shopping." But filing suit in federal court five days after a demand letter informed Ohio National that a California state-court action would be filed and would not be removable suggests a race to the courthouse to achieve "backdoor" removal. *See Great American Ins. Co. v. Houston General Ins. Co.*, 735 F.Supp. 581 (S.D.N.Y. 1990) (within two days of receiving a letter from the defendant threatening to sue in Texas state court, the plaintiff filed a declaratory judgment action in New York federal district court; after the defendant sued in Texas state court, the New York federal court declined to exercise jurisdiction over the declaratory judgment action despite the fact that it was filed a few days before the Texas case, stating that this was a "classic example of a race to the courthouse" and emphasizing that in the Texas case the [declaratory judgment] plaintiff had "every opportunity to protect the rights that it sought adjudicated in the instant action."); *Casualty Indemnity Exchange v.*

12

*High Croft Enterprises*, 714 F.Supp. 1190 (S.D. Fla. 1989) (the plaintiff insurer filed a declaratory judgment suit shortly after denying the defendant insured's claim and the court declined jurisdiction, stating that "[i]n attempting to beat defendant to the punch, the plaintiff hoped to avoid the usual nondiverse situation of the insured suing both the insurer and the insurance agent. If the plaintiff waited until the defendant sued in state court, the plaintiff – then a defendant – would not be able to remove. The plaintiff has misused the declaratory judgment act in attempting to accomplish a 'backdoor' removal"); *General Star Indemnity Co. v. Puckit, L.C.*, 818 F.Supp. 1526, 1533 (M.D. Fla. 1993) (dismissing declaratory judgment action brought by plaintiff insurer the same day it sent a coverage denial letter to defendant insured, noting that a pending state action included the nondiverse insurance agent as a party).

The fact that Ohio National sued Riley-Hagan in Texas federal court shortly after receiving a letter stating that she intended to file suit in California state court does not mean that Ohio National exhibited either subjective or objective bad faith or acted improperly. It does mean that Ohio National's choice of this Texas forum is not entitled to deference or given weight in the *Trejo* analysis. The fairness concerns weigh in favor of dismissing this declaratory judgment suit in favor of the pending California state-court suit raising the same issues.

    **C.    The Efficiency Concerns**

"The next two *Trejo* factors – whether the federal court is a convenient forum for the parties and witnesses and whether retaining the lawsuit would serve judicial economy –

13

primarily address efficiency considerations." *Sherwin Williams*, 343 F.3d at 391.[2] Ohio National argues that it would be more efficient for this court to retain jurisdiction over this declaratory judgment action because the entire dispute between all parties, including Matrix, could be resolved in this case.

Riley-Hagan argues that Matrix is a "necessary party" indispensable to obtaining complete relief and "the most important party to this contract dispute." If this suit were to go forward in the Southern District of Texas, Riley-Hagan would presumably file a counterclaim against Ohio National and a third-party claim against Matrix Direct, asserting the same claims that she has asserted in the California lawsuit. The addition of Matrix would not defeat diversity jurisdiction because this court would have ancillary or supplemental jurisdiction under 28 U.S.C. § 1367. *See State Nat. Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004) (in diversity suit for declaratory judgment on insurance coverage, supplemental jurisdiction exists over the defendant insured's negligence claim against nondiverse insurance agent).

Rule 19(b) lists four factors to be considered in determining whether a party is indispensable: (1) the extent to which proceeding without the absent party would prejudice either the absent party or the parties to the lawsuit; (2) whether a judgment can be structured with protective provisions which would lessen the potential prejudice; (3) whether a judgment in the absence of the necessary party will be adequate; and (4) whether the plaintiff

---

[2] The final *Trejo* factor – whether the federal court is being called upon to construe a state judicial decree – is not at issue in this case.

has an adequate remedy if the lawsuit is dismissed. Applying these factors, this court concludes that Matrix is not an indispensable party. This court can decide the coverage dispute between Ohio National and Riley-Hagan without joining Matrix as a party. *See Cornhill Ins. PLC v. Valsamic, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997) (neither insurance agent nor broker were indispensable parties in declaratory judgment action brought by insurer to determine coverage); *Employers Mut. Cas. Co. v. Bonilla*, 2007 WL 2809905, at *6 (N.D. Tex. Sep. 27, 2007) (insurance agent not a necessary party to declaratory judgment action to determine coverage). But even if Matrix is not an indispensable party, it is certainly a proper party to a suit arising from the refusal to pay life insurance benefits on the basis that there was no effective temporary insurance agreement.

      Matrix is not a party to this case. It is a party to the California case. While Riley-Hagan could assert claims against Matrix in this suit without destroying federal jurisdiction, it is unclear that this Texas court has personal jurisdiction over Matrix. Although personal jurisdiction is proper when "a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet,'" *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir.1999), the parties have not addressed that issue. Riley-Hagan has asserted that this court lacks personal jurisdiction over her.

      By contrast, the California state court clearly has personal jurisdiction over all the parties. All the claims arising out of the denial of insurance proceeds can be resolved in that case. If this court retained this case and issued a declaratory judgment as to coverage without

15

Matrix as a party, that would preclude relitigation of the coverage issue, but Riley-Hagan's tort claims would remain to be resolved in the California case. Efficiency concerns weigh in favor of dismissing this case in favor of the pending California suit. That pending state action will "most fully serve the needs and convenience of the parties and provide comprehensive solution of the general conflict." C.WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE § 2758 (3d ed. 1998).

Ohio National argues that this dispute should be resolved in "Texas as the first-filed forum." Ohio National cites *Simmons v. Superior Court*, 96 Cal.App.2d 119, 131 (1950) in arguing that in "conformity with the rule of comity a federal court which first takes the subject-matter of a litigation into its control . . . obtains thereby jurisdiction so to do, to the exclusion of the exercise of a like jurisdiction by other tribunals . . . the powers of which are sought to be involved by the parties or their privies to the original action." *Id.* at 124. Ohio National contends that resolution of this action in the first-filed forum would be more efficient. Ohio National's reliance on *Simmons* is misplaced. The Fifth Circuit has held that the first-to-file rule does not apply when, as here, there are "two actions pending, but one is in state court and the other in federal court." Instead, "the first-to-file rule applies only when two similar actions are pending in two federal courts." *American Bankers Life Assurance Co. of Florida v. Overton*, 128 Fed. Appx. 399 (5th Cir. 2005); *see also Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir.1999) ("Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap.").

The convenience of the parties does not weigh in favor of a Texas forum. Neither Riley-Hagan, Ohio National, nor Matrix is a Texas citizen. Riley-Hagan argues that litigating this case in Texas would impose a severe burden on her, citing the facts that she works full-time, takes care of two minor children and an aged parent, and has limited financial resources. Riley-Hagan also argues that this forum is inconvenient for the witnesses who will testify about contract formation and about the decision to deny her claim. According to Riley-Hagan, the relevant witnesses all reside in California or Ohio, and "[v]ery few, if any, witnesses to the subject matter of this action are in Texas." Ohio National contends that the burden on Riley-Hagan of litigating in Texas is minimal, because she will only need to come to Texas for the trial itself. Ohio National contends that the convenience of the witnesses favors Texas, assuming that the witnesses will be limited to Ohio National representatives (who reside in Ohio), Don Hagan's doctors (who reside in Texas), and Riley-Hagan (who resides in California).

The convenience of the parties and witnesses is neutral; it does not weigh in favor of retaining this case in Texas or dismissing in favor of the California case. The party witnesses are in California and Ohio; none is in Texas. The only nonparty witnesses may be Hagan's doctors in Texas. This factor does not support retaining or dismissing this case.

The Fifth Circuit does not require a mechanical or mathematical weighing of the nonexclusive *Trejo* considerations. *Trejo*, 39 F.3d at 589 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983)). This court finds that the *Trejo* factors weigh decisively in favor of dismissal. Because "the

questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in state court," this court declines to exercise jurisdiction over this declaratory judgment action.

In *Wilton*, the Supreme Court observed that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."  515 U.S. at 288 n. 2; *see also Gatewood Lumber, Inc. v. Travelers Indem. Co.*, 898 F.Supp. 364, 369 (S.D. W.Va. 1995) (staying declaratory judgment action, rather than dismissing it under *Wilton*, "to alleviate the risk of a possible time bar to otherwise viable causes if the State action fails to resolve all matters in controversy").  However, numerous courts declining to decide declaratory judgment actions under *Brillhart* and *Wilton* have instead elected to dismiss without prejudice. *See*, *e.g.*, *Trent v. Nat'l City Bank of Indiana*, 145 Fed. Appx. 896, 2005 WL 1990208, at *3 (5th Cir. 2005) (finding no abuse of discretion in the district court's decision to dismiss declaratory judgment action in favor of pending state-court action); *Odeco Oil & Gas Co.*, *Drilling Division v. Bonnette*, 4 F.3d 401, 405 (5th Cir.1993), *cert. denied*, 511 U.S. 1004, 114 S.Ct. 1370, 128 L.Ed.2d 47 (1994) (same); *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1332 (11th Cir. 2005) (same); *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000) (vacating district court's decision to exercise jurisdiction over declaratory judgment action and remanding with instructions that the complaint be dismissed under *Wilton*); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) (affirming

dismissal of declaratory judgment action without prejudice because the parallel state-court action included a party and issues not present in the federal action); *St. Paul Fire & Marine Ins. Co. v. Johnson Homes of Meridian, Inc.*, 2005 WL 2739141, *10 (S.D. Ala. Oct. 24, 2005) (abstaining from hearing declaratory judgment action in favor of parallel state-court proceeding and dismissing declaratory judgment action). Because the pending California state-court action allows the parties to this suit to resolve all the claims and issues arising from the denial of the insurance benefits, dismissal is appropriate.

**IV.   Conclusion**

This court declines to exercise its jurisdiction and dismisses this declaratory judgment action, without prejudice. Riley-Hagan's motions to dismiss for lack of personal jurisdiction or to transfer venue are denied as moot.

SIGNED on December 9, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge